THE PEOPLE OF THE STATE OF NEW YORK, Appellants, *v.* JAMES BOWE, Respondent.

*Support of persons in jail in civil proceedings — contract by the county for their support — 1875, chap. 251 — 1877, chap. 417 — Code of Civil Procedure, sec. 112 — perjury — what instrument falls within section 96 of the Penal Code — that an improper person makes the affidavit is no defense to a prosecution for perjury — Penal Code, sec. 98.*

The authority, given by section 2 of chapter 251 of 1875, authorizing the board of supervisors of the several counties of this State to contract with the sheriff or jailor for the support of persons confined in jail on civil process, who have made oath that they are unable to support themselves, and by section 4 of the act making its provisions applicable to the city of New York, was not taken away by the repeal of the first and fourth sections of the said act by chapter 417 of 1877, as the provisions of the said section 4 were contained in the general provisions of section 112 of the Code of Civil Procedure.

An indictment charged that a contract had been entered into between the aldermen of the city and county of New York, acting as the board of supervisors of the county, and the sheriff, for the support and maintenance of any person confined in the jail, upon any process in civil proceedings, who should make

oath of his inability to support himself during his imprisonment; that under this contract a list was made out against the county, stating the names of persons for whom and the times for which support and maintenance had been provided, and that the defendant, in the indictment, as warden or keeper of the jail, had made oath to the account or statement to the effect that the same was true, and that the maintenance and support of the persons named in it had been provided for them while they had been confined in such jail, and that they had made oath of their inability to support themselves.

It then charged that the account or list was not a true account or list of the persons for whom support had been so provided, and that they had not taken the oath required by law that they were unable to support themselves during their imprisonment, which the defendant well knew to be the fact:

*Held,* that the board of aldermen acting under chapter 304 of 1874, had power to make the contract in question.

That the statement of account verified by the jailer was a " declaration, deposition, certifiate or affidavit," within the meaning of section 96 of the Penal Code, and that the willful statement therein of any material fact known by the deponent to be false, rendered him guilty of the crime of perjury. (BRADY, J., dissenting.)

That it was no defense for the defendant to show that he was not the proper person to verify the account, so long as he did in fact verify it.

APPEAL from a judgment sustaining a demurrer to an indictment.

*Peter B. Olney,* district attorney, for the people.

*Edward W. Crittenden,* for the respondent.

DADIELS, J. :

The indictment charged that a contract had been entered into between the board of aldermen of the city and county of New York, acting as the board of supervisors of the county, and Alexander V. Davidson, the sheriff, for the support and maintenance of persons confined in the common jail of the county, upon any writ or process in civil proceedings, who should make oath of his inability to support himself during his imprisonment, and for the payment to the sheriff of the sum of seventy-five cents per day for each of such persons, during the time he shall be actually confined in such prison. That under this contract a list or account was made out against the county, stating the names, number of persons, and time for which such support and maintenance had been provided, and that the defendant, as warden or keeper of the jail, made oath to the account or statement to the effect that the same was true, and that the maintenance and support of the persons named in it had been provided

for them while they had been confined in such jail, and that they had made oath of their inability to support themselves. The indictment then charged that the account or list was not a true list of persons for whom support had been so provided, that they had not taken the oath required by law that they were unable to support themselves during their imprisonment, which the defendant well knew to be the fact. And that by verifying, as he did, the correctness of the list or statement, he had committed the crime of perjury. The defendant demurred to the indictment for the reason that it appeared upon its face that the facts stated did not constitute a crime.

The authority to contract for the support and maintenance of such persons as should make oath of their inability to support themselves during the terms of their imprisonment was provided by section 2 of chapter 251 of the Laws of 1875. As the act was then passed it authorized persons confined in the prisons or common jails of the counties of the State, after the first of January, 1875, upon any writ or process in any civil action, or proceeding in the nature of a civil action, to make oath before the sheriff, jailor or deputy jailor of his inability to support himself during his imprisonment. And upon the oath being made, then by the contract authorized to be entered into by section two of the act with the sheriff or the jailer, the persons so taking such oath were to be maintained at the expense of the public. But to recover such expense from the county, it was provided by this section that " such sheriff or jailor shall attach to all bills rendered for such support and maintenance, a list under oath of the number and names of the persons to whom such support and maintenance was furnished, and the length of time each person was so supported." And this act by its fourth section was rendered applicable to and made to include the board of supervisors, as then organized, in the city of New York. That organization was specially provided for by chapter 304 of the Laws of 1874, empowering the board of aldermen to exercise the authority and discharge the duties of supervisors in and for the county of New York.

But by section 49 of chapter 417 of the Laws of 1877, the first and fourth sections of chapter 251 of the Laws of 1875 were repealed. But this repeal was not made to abolish the legislative authority provided by those sections, but rather to supersede them, because of a general enactment of the same nature made by section

112 of the Code of Civil Procedure, which took effect at the time these sections of the act of 1875 were repealed. By this section, in any county except Kings, where a prisoner actually confined in jail makes oath before the sheriff, jailer or deputy jailer, that he is unable to support himself during his imprisonment, his support is made a county charge. This enactment was as broad as that of the sections of the act of 1875, which were repealed by the act of 1877. For it was made applicable to all of the counties of the State except Kings county, and accordingly includes the county of New York, and continued section 2 of the act of 1875 applicable as it previously had been to that county. For this purpose it was not important that the first and fourth sections of the act should be continued in force as long as their provisions were in general terms embodied in, and continued by, section 112 of the Code of Civil Procedure. That section, added to section 2 of the act of 1875, created a complete system and left the latter act the same in its substance and effect as it would have been if this section had not been inserted in the Code, and sections 1 and 4 of the act of 1875 had been unrepealed and continued in force. By this section of the Code, and the second section of the act of 1875, the authority was still preserved for making and entering into the contract alleged to have been made by the board of aldermen with the sheriff. For their authority to act as supervisors in making the contract remained unaffected, and continued in force as it had been conferred by the act of 1874. Under these several acts, considered and combined together, the board of aldermen, as supervisors of the county, were authorized to make the agreement mentioned in the indictment, and under and by virtue of it proper charges for supporting and maintaining the persons described could be made against the county. But to sustain them and entitle the sheriff or the jailer to payment under the contract, the oath provided for by law was required· to be made. And it was in taking that oath that the perjury alleged in the indictment is averred to have been committed.

By the second section of the act of 1875 the oath is, in terms, required to be made by the sheriff or jailer taking the contract, and as the contract in .this instance was alleged to have been made with the sheriff and not with the jailer, it has been supposed that the latter did not commit the crime of perjury in falsely, willfully and

knowingly verifying by his oath this false account. But the oath did, nevertheless, tend to verify the statement made and to entitle the sheriff to payment under the terms of his contract. While the act of 1875 may require the oath to be made by the sheriff or jailer taking the contract, it still does not exclude the oath of the jailer when the contract may have been awarded to the sheriff. What was required by its spirit, as well as its intention, was that the account or statement should be verified and sustained by the oath which was to be taken, and if that could not be done by the sheriff where the jail was not under his management or supervision, as it may not have been in this instance, the person to furnish the evidence would be the jailer, having himself alone the knowledge acquired by his position to enable him to supply the proof. There certainly was no exclusion in any form of his oath as a verification of the list or statement. It was proof that had to be supplied before the account would be payable, and the defendant undertook to supply that proof. And if he did that willfully, knowingly and falsely, as the demurrer to the indictment admits he did, then he would seem to have committed the crime of perjury, as that has been defined in section 96 of the Penal Code of the State. For by that section perjury has been declared to consist in declaring, deposing or certifying falsely in any material matter in any declaration, deposition, affidavit or certificate necessary for the prosecution or defense of a private right, when an oath may be lawfully administered. An oath could be lawfully administered to verify and sustain this account or statement. When so administered it was a deposition, declaration, affidavit or certificate within the language of this section, and if the defendant knew when he made the oath that it was false, as it was material for the support of the account, the crime alleged in the indictment was committed by him. It has been further provided by section 98 of the Penal Code that " it is no defense to a prosecution for perjury that the defendant was not competent to give the testimony, deposition or certificate of which falsehood is alleged. It is sufficient that he actually was permitted to give such testimony or make such deposition or certificate." This section was enacted to preserve and maintain the preceding general rule, " that though a person is not a legal and competent witness in a case, if he is actually

admitted by the court and testifies he commits perjury when what he testifies to is willfully false." (2 Bishop on Crim. Law. [5th ed.], § 1019; *Pratt* v. *Price*, 11 Wend., 127.) And it has by the Penal Code been made to include not only evidence given in the course of legal proceedings, but oaths taken under the authority by which this oath was provided for. As the law has been enacted, where an oath may be taken the party or person who takes it cannot protect himself against criminal accountability by alleging his incompetency to give the deposition or certificate of which the falsehood is alleged. But it is sufficient to render his act criminal that he has taken the oath for the purposes provided by law. That, according to the indictment, was done by the defendant. He undertook to verify the account or statement, when an oath had by statute been provided for that purpose. And he is alleged to have taken the oath knowingly, willfully, corruptly and falsely.

It has been claimed that the indictment was too general in its allegations as to the fact that the oath was false; but this objection is unfounded, for it has been averred that the persons charged for and confined in the jail had not taken the oath required by law, that they were unable to support themselves during their imprisonment, and that the defendant well knew that to be the fact. This averment included all the persons whose names were contained in the account or list which was set out as it had been drawn, in the indictment. There was not the least difficulty in understanding the particulars under this, as well as other averments, not required to be noticed, of the alleged falsehoods intended to be relied upon in support of the indictment. And when that is the form of the pleading, it has been declared to be sufficient by section 284 of the Code of Criminal Procedure.

The judgment from which the appeal has been taken should be reversed, and the defendant required to plead to or answer the indictment.

Davis, P. J., concurred.

Brady, J. (dissenting):

The defendant was indicted for perjury. The oath which was alleged to have been falsely taken was one required by chapter 251

of the Laws of 1875. It is insisted by the respondent that the act mentioned does not apply to the city of New York. Without passing upon this question, which is not necessary to the determination of the appeal under consideration, and assuming the act applies therefore to this city, the oath taken was one which was extra-judicial and not the subject of indictment. I think the opinion of Justice Barrett sustaining the demurrer is a sufficient revelation of the law by which this case is to be governed, and requires no elaboration.

The judgment appealed from should be affirmed.

Judgment reversed, and record remanded to the Oyer and Terminer, and defendant required to plead to indictment.